CHARLES D. HISS *vs.* SOLOMON McCABE.

*Injunction—Title by Adverse possession—Conveyance of Lease-hold property by Metes and bounds, will not carry Adjoining land which the Lessee acquired by Adverse possession—Construction of a Will directing land to be Sold and the Payment over of the proceeds—Defective Acknowledgment of a Deed.*

McC. obtained an injunction to prevent H. from tearing down the end wall of his house. H. stayed the operation of the injunction by an appeal bond and completed the tearing down of the wall and erected on his lot a house, one of the walls of which was built upon the space formerly occupied by the wall he had pulled down. HELD:

That if the right of McC. to an injunction were afterwards established, he would be permitted, by an amendment of his bill making proper parties and praying for an injunction in a different form and for a different purpose, to obtain such full and adequate relief as he might appear to be equitably entitled to, under the change of circumstances produced since the original injunction by the act of H.

A lot of ground in the city of Baltimore was leased in the year 1815 to A. M. for ninety-nine years, renewable forever. At the date of the lease a house was erected upon the lot, which, as subsequently discovered, extended about nine inches beyond the line designated in the lease. A M. went into possession under the lease and occupied the house until his death in 1851. By his will he bequeathed *his house* to his wife for life, and then to be sold by his executor, *the proceeds of sale to go to his adopted daughter V M.* The executor under the authority contained in the will, sold the property to J. H. D., and conveyed the same to him by deed in which the lot was described as in the original lease, to which reference was made, to be held for the residue of the term created by said lease with the benefit of renewal forever. HELD:

1st. That A. M. acquired by adverse possession a good title in fee to the nine inches of ground occupied by his house, lying outside of the limits of the lots as described in the lease.

2nd. That all that was conveyed by the executor to J. H. D. was the leasehold interest of his testator, and not the ground which the testator acquired by adverse possession.

3rd. That the assignee of said leasehold interest could not maintain a bill for an injunction to prevent the owner of the adjoining lot from pulling down the portion of said house lying outside of the lines of the lease.

4th. That V M. as the adopted daughter of the testator could not make a valid deed for said nine inches of ground, nor could she as his devisee, as the will did not give her the land but only the proceeds of the property when sold.

An acknowledgment of a deed purporting to be made by ——— Murray, without other designation of the person making the acknowledgment, is insufficient to convey the title to land.

APPEAL from the Circuit Court of Baltimore City.

The will of James Murray deceased made in the year 1851, contained the following clause:

"I give and bequeath unto my beloved wife, Julia Murray, my house in Salisbury street, between Exeter and Lloyd streets, during her life-time, she to reside in said house and to occupy—with Victorine Murray, my adopted daughter, and after the death of my wife, it is my will and desire that the house be sold by my executor, and the proceeds to be held by him for the benefit of my said adopted daughter, Victorine Murray, until she shall arrive at age."

After the death of the widow of the testator, Solomon McCabe his executor, under the authority contained in said will, sold the property on Salisbury street to James H. Davis, and conveyed the same to him by deed in which the property so sold and conveyed, was described and limited as follows:

Beginning for the same on the southeast side of Watson (formerly Salisbury) street, at .the south-western-most corner of a lot sold by James Stirling to Isaac McKim, and running thence southwestwardly bounding on Watson

street, twenty five feet: thence southeastwardly parallel with Isaac McKim's lot, one hundred feet; thence northeastwardly parallel with Watson street twenty-five feet to the southwest corner of Isaac McKim's lot and thence bounding on said lot to the place of beginning. (For title see lease from James Stirling to Alexander Murray, dated the 27th day of September 1815, recorded in Liber W. G., No. 132, folio 524, &c., one of the Land Records of Baltimore county, and is subject under said lease to the payment of the yearly rent of fifty dollars on the first day of August in every year.) Together with the improvements thereon, and all the rights and appurtenances to the same belonging or in anywise appertaining, and all the estate and interest, right, title, claim and demand whatsoever at law and in equity of the said Alexander Murray, deceased, in his lifetime, and at the time of his death, and of the said Solomon McCabe, executor as aforesaid, therein or thereto. To have and to hold the piece or parcel of ground and premises above described, with the rights and appurtenances aforesaid, unto the said James H. Davis and his assigns, during all the residue of the term of years therein granted and yet to come and unexpired, with the benefit of renewal of said term from time to time forever. Subject however, to the payment of the aforesaid yearly rent of fifty dollars, to whoever the same may from time to time be due and payable; and subject also to the conditions of an outstanding sub-lease," &c., &c.

The same day, Davis conveyed the same property by the same description, and for the same unexpired term of years, to Solomon McCabe, the appellee, by whom the bill in this case was filed. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, ALVEY and ROBINSON, J.

*William A. Stewart,* for the appellant.

*Thomas A. Hopkins,* for the appellee.

BARTOL C. J., delivered the opinion of the Court.

The original bill of complaint in this case was filed by the appellee on the 11th day of March 1863, alleging that the complainant is the owner of a lot of ground having a front on Watson Street of twenty-five feet or upwards, and a depth of 100 feet, a part of which is improved with a two-story frame dwelling house, having a front on said street of about thirteen feet more or less, and a depth of about 40 feet, known as No. 12 Watson Street, more fully described in "Exhibit A." filed with the bill; which house was built more than forty years ago, and has been standing where it now stands ever since; that the appellant, who claims to be the owner of the ground on the West side of the house and lot of the complainant, has begun to tear down and destroy the said house, and to break up the same, and is now with his servants, agents and workmen, engaged in so destroying, tearing down and breaking up the complainant's house, without authority; that the said house and lot are now occupied by a German and his family, who hold the same as complainant's tenants, that the said German is now sick and confined to his bed in said house, and that the appellant is doing irreparable damage to the complainant and his said property, and engaged in conduct tending to a breach of the peace; the bill prays for an injunction, which was issued. The "Exhibit A" referred to in the bill is a deed dated August 21st 1862 from James H. Davis to Solomon McCabe (the complainant) conveying for the consideration of seventy-five dollars, a lot therein described as fronting 25 feet on Watson Street with a depth of 100 feet. After the injunction had been issued the appellant, having filed his answer, appealed from the order granting the injunction,

and upon the hearing of the cause in this Court, the order was affirmed and the case was remanded. The opinion of this Court accompanying the decree is recorded among the unreported opinions (*Liber G. E. and J. S. F., No.* 1, *folio* 25.)

After the cause was remanded, a commission was issued and testimony taken and on submission of the case for final hearing the Circuit Court on the 10th day of November passed a decree, making the injunction perpetual and awarding costs to the complainant. From that decree this appeal was taken.

It appears that the title to the ground was in James Stirling who on the 27th day of September 1815, leased to Alexander Murray, for 99 years, a lot described by metes and bounds fronting 25 feet on Salisbury Street (since called Watson Street) of the depth of 100 feet, reserving a yearly rent of $50. At that time a portion of the front on Watson Street was improved by a frame house, which as it has since been discovered by actual measurement extended about nine inches beyond the line designated in the lease, being to that extent upon the adjoining lot on the west, then unimproved; Alexander Murray went into possession under the lease, and occupied the frame house till his death in 1851. By his last will duly executed he bequeathed *his house* to his wife for life, then to be sold by his executor, the proceeds of sale to go to his adopted daughter, Victorine Murray. The appellee was named in the will as executor and guardian. On the 18th day of August 1862, he sold the house and lot at public sale to James H. Davis for $25 and conveyed it to Davis by deed dated August 21st 1862. In which the lot is described as in the original lease 25 feet by 100 feet, and is subject to the sub-lease of a portion thereof fronting 12 feet, made by Alexander Murray in his life-time, on which a yearly rent of $25, is reserved. On the same day, Davis conveyed the same property to the appellee, by the deed

exhibited with the bill of complaint, and before referred to. This was the state of the appellee's title when these proceedings were commenced.

At that time the sister of the appellant owned the adjoining lots on the west, fronting on Watson Street and claims title to the ground, to the west line of the lot described in the lease from Stirling to Alexander Murray, about nine inches of which were covered by the frame dwelling house occupied by the appellee's tenant, and wishing to erect improvements on the lots thus claimed by her, proceeded by the appellant, who acted as her agent, to tear down and remove the western end of the appellee's house, and the injunction prohibited him from tearing down, breaking up, destroying or in any way interfering with the house and premises of the appellee.

It appears from the record that pending the former appeal, and while the operation of the injunction was stayed, the appellant went on and removed the end of the house. It further appears from the evidence that since the bill was filed, two houses have been erected upon the ground adjoining on the west, the easternmost brick wall of the newly erected house having been built on the space formerly occupied by the end of the frame house where it had been cut away.

It is therefore physically impossible that the injunction, in the form in which it was originally granted, can be enforced; to continue it in its present form would be entirely nugatory and useless. This results from the conduct of the appellant, and there is much force in the argument of the appellee's solicitor that his client ought not to be deprived of all equitable remedy and relief, by reason of the wrongful acts of the appellant; thus allowing a party to take advantage of his own wrong. Although for the reason assigned, the injunction in its present form ought not to be continued the same being of no practical use, the appellee would not thereby be necessarily deprived of all remedy;

Hiss *vs.* McCabe.

for if it appeared from the record, that he is vested with the legal title to the piece of ground in dispute, this Court would remand the cause to enable him, by an amendment of the bill making proper parties and praying for an injunction in a different form and for a different purpose, to obtain such full and adequate relief as he might appear to be equitably entitled to. But the difficulty in the way of the appellee, proceeds from a failure on his part to show any valid legal title to the piece of ground in dispute, the nine inches of land lying outside of the limits of the lot described in Stirling's lease.

There can be no doubt that the same belonged to Alexander Murray, who acquired by uninterrupted, exclusive, adversary possession of thirty-five years, a good title to the land occupied by his dwelling house. His estate was leasehold to the extent embraced in his lease ; outside of these limits his title or estate acquired by possession, was in fee-simple, and it is very clear that this last was not acquired by the appellee under his deed from Davis. All that was sold by Murray's executor to Davis, and by the latter conveyed to the appellee, was the leasehold estate of Alexander Murray. This appears from the deeds before referred to, which are mere assignments of the term of years, and operated to convey no more than was embraced within the lines of the original lease from Stirling to Murray.

It appears therefore that at the time the bill was filed, the appellee had not the legal title to the nine inches of ground in question, and for this reason, if there were no other objection, he is not entitled to maintain the injunction. Some years after the bill was filed, on the 3rd day of December 1872 the appellee obtained from William Collins and Victorine his wife, and Jacob Murray and Eliza his wife, a quit-claim deed, for a lot 25 feet 9 inches in front by 100 feet deep, the lot purporting to be the same which formerly belonged to Alexander Murray.

Jacob Murray one of the parties grantors, is described in the deed as the heir at law and next of kin of said Alexander Murray, and Victorine Collins as the adopted daughter of said Alexander who is mentioned in his will as Victorine Murray. This deed is produced for the purpose of showing that the title to the nine inches of ground, not embraced in the lease, which it is alleged had been acquired by Alexander Murray in fee by adversary and exclusive possession, has been thereby vested in the appellee. But it is ineffectual for that purpose, the same not having been acknowledged according to law. The acknowledgment purports to have been made by ——— Murray without other designation of the person making the acknowledgment which is insufficient to convey the title of Jacob Murray even if it were satisfactorily proved that he was the heir at law of Alexander Murray deceased.

Victorine Collins had no title to the premises, she was not a daughter of Alexander Murray and could claim nothing by inheritance, and is not devisee of his land, which was bequeathed to the widow of the testator for life, and then was directed to be sold by the executor, the proceeds to be held by him for the benefit of his adopted daughter Victorine Murray.

The title of the appellee remains the same as it was when the bill was filed, and does not embrace the piece of ground in question.

For these reasons the order of the Circuit Court making the injunction perpetual will be reversed, and the bill of complaint will be dismissed. But the appellant will be required to pay the costs of this appeal.

*Order reversed, and*
*bill dismissed.*

(Decided 15th June, 1876.)