AARON JACOBS *vs.* LEVIN W. DISHAROON.

*Adverse Possession—Mistake in Deed as to Boundary of Land—
Evidence—Payment of Costs of Record on Appeal.*

In 1873, plaintiff agreed to purchase one acre out of a larger tract of land. When the acre was first measured by a surveyor in the presence of the vendor and of the plaintiff, the former objected to the shape of the lot, and the surveyor then made a different location of two of the lines, and at the

same time told the vendor that the tract so located would
contain more than an acre, but the vendor agreed to the sec-
ond location. The deed as executed, by mistake of the ven-
dor, described the land according to the first location, but
the purchaser took possession of it as marked in the second
location and enclosed and cultivated that land. More than
twenty years, afterwards, and after the death of the vendor,
his land was sold to the defendant, who, upon having a sur-
vey made, discovered that a part of the land so occupied by
the plaintiff was within the lines of his deed. He then re-
moved plaintiff's fences and entered upon the part of the
land not described in the deed to the plaintiff. In an action
of trespass *q. c. f. held,* that the plaintiff did not take posses-
sion of any part of his land as a gift, and that since he had
been in actual and exclusive possession of the land for more
than twenty years, he had acquired a valid title thereto by
adverse possession, although some of it was not included with-
in the lines of his deed, and that he is consequently entitled
to maintain the action.

When the purchaser of land did not know at the time of the
purchase that a certain boundary fence had been erected un-
der a mistake as to location, evidence that he then accepted
the line as it stood is inadmissible.

Evidence that the vendor of land measured a certain boundary
line as the one finally agreed upon is admissible to show what
land was sold, and also to show that the vendor had knowl-
edge of the extent of the subsequent possession by the pur-
chaser.

When the question is whether a party had been in possession of
certain land, a witness cannot be allowed to state that that
party took possession of the land, as far as he knew, without
disclosing what knowledge he had or by what acts possession
was taken.

In order to prove adverse possession, evidence that a witness
never heard of anybody else besides the plaintiff being in
possession is not competent.

An appeal will not be dismissed merely because the appellant
did not comply with Rule 34 of this Court, which requires
the appellant to pay the costs of printing the record on ap-

peal within ten days after receipt of a notice of the amount of the costs. The rule does not prescribe that penalty.

*Decided March 31st, 1910.*

Appeal from the Circuit Court for Worcester County (HOLLAND and JONES, JJ.).

The cause was submitted to BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ., on briefs by:

*Melvin & Handy,* for the appellant.

*John W. Staton,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This is an action of trespass. The *narr.* alleges that the defendant broke and entered certain lands of the plaintiff in Worcester County, Maryland, and depastured the same with cattle, etc., and the case was tried on the issue joined on the plea of "did not commit the wrong alleged."

There are five exceptions in the record, the first four to the rulings of the Court on the evidence, and the fifth to the granting of a prayer, at the conclusion of plaintiff's testimony, instructing the jury that under the pleadings and evidence there was no legally sufficient evidence in the case to entitle the plaintiff to recover. The evidence shows that Henry Jones, who was the owner of a tract of land in Worcester County, agreed, in 1873, to sell the plaintiff, for fifty dollars, one acre of land. He, the plaintiff and a surveyor, George R. Marshall, accordingly went on the land, which was then in woods, to lay off the lot. The following plat was made by agreement of counsel, and offered in evidence "to be used for illustration on the trial:"

Mr. Jones measured seventy-four yards along the wood road, called on the plat "Marshall Road," from 1 to 4 on the plat, told Mr. Marshall that it was ninety yards by straight line to the Bennum land, and asked him to calculate how long the line along the Bennum line, measured from the corner marked 2 on the plat, would have to be to make the acre. Mr. Marshall made the calculation and told him that thirty-four yards along the Bennum line would make a fraction over an acre, and they then measured it off and put stakes down. Mr. Jones then looked at it as it had been laid off, and said he did not like the shape of the lot, that it was too narrow on the back, along the Bennum line, and that he could "take a piece off the front and put piece on in place of it on the back." He then took seven feet off of the front line, along the Marshall road, that is, from 4 to R. on the plat, and extended the thirty-four yard line along the Bennum line, from 3 to 5 on the plat. Mr. Marshall told him that that would make more than one acre, and he said "never mind," he would, "put that to it for the piece I took off the front." Mr. Marshall asked him who he was going to get to write the deed, and he told him "Major G. Holland, J. P." Mr. Marshall then told him that he would have to tell him about the extension of the line from 3 to 5, in order that he could write the deed accordingly, and he said he would "tell Guy about it."

The evidence further shows that the plaintiff, who cannot read, drove stakes down according to the location agreed upon, immediately took possession of the lot, and within a year from the date they measured and located it, cut the wood off of it, built his house and enclosed the lot, erecting a fence along the line, from 5 to R. on the plat, between the lot and Mr. Jones' land, now owned by Ambrose Rowley.

The deed from Mr. Jones and his wife to the plaintiff was executed January 13th, 1873, and recorded February 18th, 1873, and the evidence is also clear that from the year he purchased it the plaintiff was in actual, visible, uninterrupted and exclusive possession of the lot as enclosed, cultivating it,

paying the taxes and asserting claim to it for nearly twenty-three years before Mr. Jones' death and down to the time of the alleged trespass. After Mr. Jones' death his land was sold to the appellee. In 1903 the appellee sold the Ambrose Rowley lot. This lot was surveyed for the appellee by William U. Schoolfield, county surveyor for Worcester County, who made the plat in this case, and who ran the line of the Ambrose Rowley lot from 5 to R. on the plat according to the fence erected on that line, between plaintiff's lot and the balance of Mr. Jones' land, and the deed from the appellee to Ambrose Rowley was made according to that survey. The County Surveyor says that when he made the first survey for the defendant he ran the Ambrose Rowley lot "entirely by enclosure." He states further, "there was a fence commencing at red letter R. on the Marshall road and on the plat and running in a right line to black figure 5, and this fence he ran by as a line of the Ambrose Rowley lot. That he subsequently made another survey of the plaintiff's and Ambrose Rowley and Mary Rowley lot for the defendant, and ran the deed from Henry and Jane Jones to the plaintiff and found that the third line of that deed terminated on the Marshall road at red figure 4, enclosing a triangle between the lines drawn from red letter R. to red letter B. and to red figure 4 and back to red letter R., at which last point he found a post. He found the distance from the post at red letter R. to No. 4 red figure 4 was seven feet."

After the second survey by the County Surveyor the defendant entered upon the land between figures 3 and 5 on the plat, tore down plaintiff's fence along the line between figure 5 and letter R. on the plat, and, the plaintiff says, "destroyed what vegetables I had planted there at the time."

The defense in this case is based entirely on the cases of *Walsh* v. *McIntyre,* 68 Md. 402, and *Waltemeyer* v. *Baughman,* 63 Md. 200, but the principle applied in those cases does not apply to the facts in this case. In *Walsh Case* the Court said: "It is certainly not the law in Maryland, that a party can acquire title, which is maintainable at law, by

parol gift followed by actual possession, no matter how long and exclusively continued. * * * Here there was no apparent title; there was bare occupancy and nothing more, except the claim in 1869, that David Schriver had given the property to the appellee by parol, and she had entered under this authority in pursuance of the gift." In *Waltemeyer's Case* the Court held that where possession is taken by permission of the owner, it cannot become adverse without notice to the owner that possession is continued under claim of right.

In the case at bar the appellant did not take possession by permission of Mr. Jones, or hold the property under a parol gift, but he took possession of it in the assertion of his right to the property *against* Mr. Jones and claiming under his purchase and deed.

Nor is this case like the case of *David* v. *Furlow,* 27 Md. 537, where JUDGE BARTOL said: "A disseisin cannot be committed by mistake, because the intention of the possessor to claim adversely is an essential ingredient of a disseisin." Mr. Washburn says: "The general rule is that possession under a mistake as to the extent of boundaries will not prevent the running of the statute, provided the circumstances are not such as to rebut the intention to claim adversely. The distinction seems to be this: if the limits of the occupation be fixed with the intention of claiming them as *the* boundaries, the statute runs; but if the occupation and delimitation of the boundaries appear to be merely provisional, with the intent to claim them as boundaries if they are found to be the proper boundaries, then the statute does not run."  3 *Washburn Real Prop.,* sec. 1968 (6th ed.).

Here there is no question as to what land was purchased by the appellant, nor is there the slightest doubt about his intention to claim the line agreed on, and on which he erected his fence, as a boundary of his lot, and to hold that one who purchases a lot, and continues for more than twenty years, in exclusive, notorious, hostile and actual possession of it by enclosures, asserting his claim to it *as enclosed,* must surrender it because of some defect in his deed would largely do

away with title by adverse possession. The decisions in this
State agree that where a party takes possession of property
under claim of right, and continues in actual, hostile, notor-
ious and exclusive possession for more than twenty years, he
acquires title thereto. *Hiss* v. *McCabe,* 45 Md. 77; *Sadtler*
v. *Peabody Heights Co.,* 66 Md. 1; *Rother* v. *Sharp St.*
*Church,* 85 Md. 530. The appellant did not erect his fence
along the line in dispute, and cultivate the land up to it, by
mistake, but he did it because he had helped to locate the lot
and knew, as Mr. Jones knew, that that was the lot he pur-
chased and paid for. The erection of the fence and occupa-
tion of the land was an assertion of his right up to that line,
and Mr. Jones never questioned that right. The error in the
deed was the result of Mr. Jones' mistake. When cautioned
about the preparation of the deed, he said he would tell
Major Holland about the change in the line, but that as the
deed would say one acre "more or less," he supposed that
that would be sufficient to include the land in question. The
extent and character of the appellant's possession established
his title to the property, and we must, therefore, hold that
there was error in the granting of defendant's prayer.

Witness Marshall stated that "Levin W. Disharoon bought
the Massey (Jones) farm and after a while sold Ambrose
Rowley a lot. He, Disharoon, then accepted the line as it
then stood." The defendant objected to the statement of the
witness that Disharoon "accepted the line as it then stood,"
and the Court properly struck it out. Disharoon, the appel-
lee, did not discover, nor did the appellant know, until after
the second survey that appellant's deed did not include the
land in question, and the fact that he did not until then
question appellant's title, which had been acquired by ad-
verse possession long before the appellee purchased the ad-
joining land, was immaterial. The statement was not im-
portant, however, as the fact clearly appears from other evi-
dence in the case.

The second exception is to the action of the Court in strik-
ing out the statement of witness that Mr. Jones measured the

line, along the Bennum line, "as the final line agreed on."
We think this evidence was admissible, not only for the pur-
pose of showing what land the appellant purchased, but also
for the purpose of showing Mr. Jones' knowledge of the char-
acter and extent of the appellant's subsequent possession.

Witness, Marshall, was then asked, "Did or not Aaron
Jacobs enter into possession of the lot as it was fixed and
stated by Mr. Jones?" and he replied, "Right then as far as
I know and ever since." The defendant objected to the
answer and the Court struck it out. In support of this ex-
ception the appellee relies on the case of *Thistle* v. *Frost-
burg Coal Co.,* 10 Md. 129, where it was said that "Posses-
sion is a question of law to be determined by the Court, upon
the facts of the case, and where this is the point at issue in
the suit, the mere statement of a witness that he *took posses-
sion* of the land, without stating the *acts* by which he did so,
is not admissible evidence." The witness had already testi-
fied to certain acts by which the appellant took possession,
and if his answer to this question could have been confined to
what he had previously stated, it would not have been ob-
jectionable. *Hackett* v. *Webster,* 97 Md., page 407. But
we think it was misleading and that there was no error in
striking it out. A witness should not be allowed to say
that a party took possession of property *as far as he knew,*
for without disclosing *what knowledge he has,* it would be
impossible for the jury to properly weigh his testimony.

The same witness was further asked, "Did anybody else
except Jacobs ever have possession of that lot or any part of
it until Disharoon undertook to enter upon it?" and he re-
plied, "I never heard any talk of it." It was entirely proper
for the plaintiff to prove that he had had uninterrupted pos-
session of the property for twenty years, but the fact that
the witness had "never heard any talk of" anybody else
having possession if that is what he meant, would not tend
to prove it, and the Court did not err in striking out his
answer to the question.

In regard to appellee's motion to dismiss the appeal, on the ground that the appellant did not pay, or secure to be paid, to the clerk of this Court the cost of printing the record in this case, within ten days from the receipt, at the office of appellant's attorney, of the notice from the clerk of the amount of such cost, as required by Rule 34, it is only necessary to say that the rule does not provide that for failure of the appellant to pay the amount within the ten days the appeal may be dismissed.

Because of the errors pointed out, the judgment of the Court below must be reversed and case remanded.

> *Judgment reversed with costs, and new trial awarded.*