WHITE ET AL. *v.* HARDISTY ET UX.

[No. 229, September Term, 1958.]

*Decided June 4, 1959.*

154

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Linwood L. Clark* and *Lansdale G. Sasscer, Jr.,* for appellants.

*Waldo Burnside,* for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The heirs of Robinson White appeal from a decree wherein the chancellor held that the appellees had a good fee simple title to certain land located in Prince George's County that they had purchased from the County Commissioners [Commissioners] after it had been purchased at tax sales by the Commissioners. Involved are some 41 lots (being in the main unimproved, although several have been built upon since their purchase by the appellees) that had been owned by White, who died in 1939. They were offered for sale at various times between 1924 and 1935, both years inclusive, because of the failure of White to pay the taxes thereon; and, in accordance with the statute, Code P. L. L. (Flack 1930), Art. 17, Sec. 359, were sold to the Commissioners. The heirs found out during the administration of White's estate that the lots, although they could not identify them specifically, had been sold for taxes, but apparently did nothing about it. In 1949, the appellees purchased the same from the Commissioners and obtained and recorded a deed therefor. Negotiations between the appellees and the heirs followed, in which the appellees attempted to get a quit-claim deed for the lots from the heirs, but the parties were unable to agree on the price. Finally in October of 1956 the appellees filed their bill of complaint praying that the court enter a decree declaring that they have a fee simple title to said lots, free and clear of any claim by the appellants or any person claiming under them.

The principal contention of the appellants is that the relief requested by the appellees, although they are proceeding under the Uniform Declaratory Judgments Act, is, in effect and reality, a prayer to foreclose the appellants' equities of redemption in the property involved, which they argue cannot lawfully be done. They claim that the Code (1957), Art. 81, Secs. 97, 98, 99, *et seq.*, (the sections that deal with the foreclosure of rights of redemption after tax sales by equity suits), do not permit this; that said sections name a "special form of remedy for a specific type of case" which the Code (1957), Art. 31A, (Uniform Declaratory Judgments Act) Sec. 6 says "must be followed." This argument overlooks the language in said Section 6 immediately after that above quoted, which states, "but the mere fact that an actual or threatened controversy is susceptible of relief through a general common-law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case in which the other essentials to such relief are present * * *." This last quoted portion is a part of the 1945 amendment (Acts of 1945, Ch. 724) which this Court has held was plainly to broaden and enlarge the scope of declaratory relief. *Turner v. Manufacturers' Casualty Ins. Co.,* 206 Md. 601, 112 A. 2d 670. No matter what may be the procedural requirements of a purchaser at a tax sale after the effective date of the present statute (January 1, 1944) to perfect his title, this Court held in *Shapiro v. National Color Ptg. Co.,* 191 Md. 194, 200, 60 A. 2d 679, that purchasers at tax sales held before that date have the option to proceed either under the provisions of prior laws or under the present act. See also *Weiner v. Weirich,* 196 Md. 539, 542, 77 A. 2d 5, to the same effect. As all of the tax sales involved herein were prior to January, 1944, the appellees were entitled under the provisions of the Code (1957), Art. 16, Sec. 128 and the Uniform Declaratory Judgments Act to have their rights under the deed to them from the County Commissioners in 1949 declared. Cf. *Shapiro v. Board of County Commissioners,* 219 Md. 298, 149 A. 2d 396.

The appellants further argue that the deed to the appellees

from the County Commissioners conveyed no more than "a group of tax sale properties including the 41 lots in this case." They urge that under the terms of Code (1957), Art. 81, Sec. 88, which provide that the said Commissioners "shall have the same rights and remedies with regard to such property [property sold for taxes] as other purchasers, including the right to foreclose the right of redemption," and "[a] certificate of sale in the form herein provided for shall be issued by the collector in the name of the county commissioners," the Commissioners may "foreclose certificates of sales of said lots," or assign such certificates to others, but they cannot deed or convey the property to others. This contention gives no consideration to the provision of Section 98 (referred to above) that any purchaser at a tax sale prior to December 31, 1943, may proceed either under the provisions of "this subtitle," or under the provisions of prior existing laws, and this Court's holding in the *Shapiro* case, also referred to above, to the effect that the same applied with reference to Section 99.

The appellants also argue, in regard to this same matter, that under the provisions of Code (1939), Art. 81, Sec. 87, which stated that when the County Commissioners of any county were the purchasers at tax sales, the Collector should, at the proper time, make the deed for the same unto them, that the appellees' title is defective because there was no deed from the Collector to the Commissioners. The contention has little merit. By Section 73 of the same Code and Article, the procedure outlined in Section 87 was optional—the Commissioners were authorized to proceed under the then existing laws or that named in Sections 74 to 90 of the 1939 Code. Moreover, the above mentioned Section 87 was state-wide in application, while Prince George's County had, and has, a local statute, Code of Prince George's County (Everstine 1953), Section 496, under which its tax sales were conducted. This section provides that upon final forfeiture after a tax sale to the Commissioners, a good fee simple title to the same shall be vested in the County Commissioners, *without the execution of any deed therefor.* Thus it is seen, by the plain terms of the statute itself, no deed to the Commissioners was necessary.

We note, however, that under a strict compliance with the

statute as it stood from 1924 to 1937, Code P. L. L. of Maryland (Flack 1930), Article 17, Section 359, when the tax sales involved herein took place, the County Treasurer would have executed the deed to the purchaser from the Commissioners, instead of the Commissioners themselves. In no event could a failure by the Treasurer to execute the deed to the appellees aid the appellants. The statute specifically stated that a fee-simple title had vested in the Commissioners. It is apparent that this provision for the execution of a deed by the County Treasurer to the purchasers from the Commissioners (who held the fee-simple title to the property) was to insure the receipt by the county of the purchase price for the land sold and to facilitate the keeping of the Treasurer's books of account; and, in effect, it constituted him the agent of the Commissioners to convey their title to the land to the purchasers. Under these circumstances, the deed directly from the Commissioners to the purchasers was effective to convey title to the lots involved herein unto the appellees. The statute since 1937 has provided that the County Commissioners execute such deeds.

The appellants conclude their contest by claiming the appellees are barred from bringing this suit by the Code (1957), Art. 57, Sec. 15, which applies only to Prince George's County, and reads, in pertinent part, as follows:

> "Whenever land * * * shall be sold for the payment of county or State taxes, * * *, and the owner * * * at the time of such tax sale, his, her or their heirs, devisees or assigns, severally, jointly or in continuous successive ownership have held [the] land * * * so sold in *adverse possession* for seven years after the final ratification of such tax sale and before action or suit brought, and duly prosecuted by the purchaser * * * at such tax sale, * * * to obtain possession of such land * * *, such possession shall be a bar to all right, title, claim, interest, estate, demand, right of entry, and right of action in such purchaser or purchasers, his, her or their heirs, devisees or assigns derived from such tax sale as to the land or lands so held in possession." (Emphasis added.)

They apparently contend the County Commissioners were required, under the terms of this statute, to take physical possession of the lots sold for taxes and to bring an action against them, as the heirs of White, within seven years after the recording of the deed to the appellees. In other words they claim, although the appellants never took physical possession of the land, they, simply because they were the heirs of White, were in possession of the same, and their "adverse possession" started to run from the date of the recording of the deed, which was more than seven years before the filing of this suit. We cannot conclude the law is such as the appellants contend. When there was a final "forfeiture" of the property under the tax sale statute mentioned above, the County Commissioners were vested with "a good fee-simple title" to the same, and, although the owner (as named in the statute and we shall assume his heirs) had a right to redeem the property until the purchase money was actually paid by a purchaser from the Commissioners, when the appellees actually paid, in 1949, the purchase money for the lots bought, under the provisions of the same statute, the appellants' interest therein ceased, unless it has been revived by said Section 15, quoted above.

We shall lay aside any question as to whether Section 15, being a statute of limitations, has any application to a county when it becomes a purchaser at a tax sale. Cf. *Sachs & Sons v. Ward*, 182 Md. 385, 393, 394, 35 A. 2d 161; 1 Am. Jur., *Adverse Possession*, Secs. 105, 106. It will be noted immediately that the statute anticipates an *adverse possession* by the owner, his heirs, etc., as against the purchaser at a tax sale, and precludes and bars all the rights of the purchaser if such adverse possession continues for seven years or more. The burden of proof of establishing adverse possession is upon him who relies upon the same to establish his right of action or his defense. *Sachs & Sons v. Ward, supra*, at p. 394; 1 Am. Jur., *Adverse Possession*, Sec. 237. And whether the claimant be a *tort feasor* or has color of title, he must, in order to be successful, show actual possession,[1] which possession must be ad-

---

1. Venable, *Syllabus, Law of Real Property, Title*, pp. 23, 24, 25. If held by color of title, possession of the entire property, of course, is not required.

verse, notorious, exclusive and continuous for the statutory period.   See *Stump v. Henry,* 6 Md. 201, 209, *Gore v. Hall,* 206 Md. 485, 490, 112 A. 2d 675, and *Goen v. Sansbury,* 219 Md. 289, 149 A. 2d 17.

We shall not prolong this opinion much longer.   In the case at bar, the appellants concede they never took physical possession of the lots; they rely entirely upon whatever "possession" they acquired as the heirs of White.   The only assistance afforded this possession was that some of the heirs occasionally drove out to the lots, and once one of the heirs told someone who was building on one of the lots that he had better have his title thereto searched.   A mere statement of such a claim shows the complete inadequacy of the same to constitute adverse possession.

Finding no error in the rulings of the chancellor the decree will be affirmed.

*Decree affirmed, with costs.*