ERVIN ET UX. *v.* BROWN, ADMINISTRATOR, ET AL.

[No. 79, October Term, 1953.]

*Decided February 12, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

Submitted on brief by *William B. Wheeler* and *William J. Brannan, Jr.*, for the appellants.

*Thomas C. Kelley*, with whom was *J. Hodge Smith* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the defendants below, appellees here, in a suit in ejectment.

On May 22, 1952, the appellants, William E. Ervin and Mary E. Ervin, his wife, filed a suit in ejectment against Stanley D. Brown alleging that he broke and entered on certain lands of the appellants in Montgomery County, Maryland. A plea of "not guilty" was filed by Spencer J. H. Brown and Blair Lee Brown, the committee and trustees for the said Stanley D. Brown, who was then an incompetent. On January 19, 1953, a suggestion was filed that the defendant, Stanley D. Brown, had died intestate, that letters of administration had been granted to his brothers, Spencer J. H. Brown and Blair Lee Brown, and that the decedent's only heir at law was his sister, Anna B. Nicholson. As a result of this suggestion, Spencer J. H. Brown and Blair Lee Brown, administrators and heirs at law, and Anna B. Nicholson, heir at law, were substituted for Stanley D. Brown, as defendants in this cause. On May 20, 1953, a trial was held before the trial judge, who found that title had been acquired to the disputed land by the de-

fendants by adverse possession. From a judgment for the defendants for costs, the plaintiffs appeal.

For the purposes of this case, the testimony is as follows. On April 16, 1924, the appellants purchased a parcel of land in Montgomery County containing one acre, more or less, which contained a parcel of land consisting of 4,280 square feet, hereinafter referred to as the "telephone building lot", here in dispute. On June 6, 1929, Stanley D. Brown, appellees' decedent, purchased a parcel of land adjoining the Ervin land and bounded along its entire northeast side by the lot here in dispute. There is no dispute in this case that this telephone building lot was contained in the Ervin deed of April 16, 1924. Mr. Thomas G. Oyster, called as a witness by the appellants, and a surveyor of forty-two years experience, whose qualifications were admitted, testified that he made a survey of appellees' property in 1946 and found the disputed area was contained within the property conveyed to the appellants. He further testified that he knew there had been a garden on the disputed land before the survey was made. The edge of the garden was not defined. There was a dividing line between this disputed area and other land of the appellants consisting of a privet hedge and several trees. He further said he had occasion to observe the use of the disputed land prior to the time he made the survey in 1946. The telephone company building was there in a garden which appeared to be used by the Browns. From the testimony of an attorney, Mr. Arthur C. Bready, it is evident from a lease and a reformed lease, that the Chesapeake and Potomac Telephone Company has rented the disputed land from Mr. Stanley D. Brown since July 28, 1939. Mr. William E. Ervin, one of the plaintiffs, testified that he had owned his property for twenty-nine years. The telephone building was built by Mr. Stanley Brown in 1939. Mr. Ervin did not know that this building was on the land which had been conveyed to him, until Mr. Spencer. Brown wanted to buy the property in 1950.

He said he planted the hedge between this land and his other property. He did not remember the year in which he planted it but he put it along what he thought was his dividing line. When Miss Mary Stabler owned the adjoining property a part of the disputed land was worked as a garden and part of it was grown up in bushes. It was worked by Miss Stabler in conjunction with her property. He further said that, when Mr. Stanley Brown acquired the property from Miss Mary Stabler, Mr. Brown used a part of the telephone building lot as a part of his garden and occupied the disputed land within four or five feet of the hedge and that he never used any of the disputed land himself. He further admitted that when Mr. Spencer Brown came to see him in 1950, saying he represented Mr. Stanley Brown, he told him he had not thought he owned the disputed land. He told Mr. Brown that if he would present a deed, he would sign it and he would talk with his wife and would consider selling it to him. He further admitted that since he had acquired the land in 1924 he had never exercised any act of ownership whatsoever over the disputed tract.

Mr. Carl F. Walman, the manager of the telephone company in that area, called as a witness by the defendants, testified that the lawn of the telephone building lot extended ten feet to the west of the building, fifteen feet to the east, and about twenty-five feet to the rear and that Mr. Ervin had never claimed any ownership of the lot. Mr. Leslie T. Nally, testifying for the defendants, said he was foreman-supervisor for the telephone company in that area. He was familiar with the land upon which the telephone exchange building was located. He rented the house on the Brown property from the spring of 1936 until January, 1941. When he rented the property from Mr. Brown, the disputed land was a garden. He was then given permission to work in the garden which ran within six feet of the hedge on the west side of the Ervin property until the telephone building was erected. Someone had had

a garden in the same location before he rented from Mr. Brown. He further said that previous to the time he had a garden there, the garden was worked within twelve feet of the hedge but after he rented it, he worked it closer to the hedge. Mrs. Hilda M. Beall, testified that at one time she was the wife of Stanley Brown, and was married to him at the time he acquired the property in 1929. Prior to the time the telephone building was built, she and her then husband used the disputed land as a garden and at that time the garden ran within six to ten feet of the hedge. She said the garden ran as far south as the south line of the Brown property and that the telephone company now occupies the property to the hedge. During the time she was married to Mr. Brown, Mr. Ervin never made any use of the land in dispute. She always thought the disputed land was covered by her former husband's deed. She and her husband cleared the land and had the garden there from 1929 until the telephone building was built. The plowing of the garden was done by Mr. Spencer Brown. They never thought at any time they were encroaching on Mr. Ervin. Mr. Spencer Brown testified that when his brother moved to the property in 1929 it was evident that there had formerly been a garden on the disputed land. He plowed the garden for his brother that year. He could not plow closer than four or five feet from the hedge because of the roots of the trees. Except for the difficulty in getting close to the hedge he plowed all the area which is now in dispute. He plowed this same land, now rented by the telephone company, every year for his brother from 1929 until it was rented to Mr. Nally. In 1950, as trustee for Stanley Brown, he had a conversation with Mr. Ervin, who told him that if he would have a deed drawn for the disputed land, he would be glad to sign it. Afterwards, Mr. Ervin told him there was some objection by his children and he had turned the whole matter over to his attorney.

There was, as hereinbefore set forth, credible testimony that Mr. Stanley Brown occupied the disputed

land as a garden from the time he purchased it in 1929 until he rented it to the telephone company in 1939. Mr. Nally, holding as tenant of Mr. Stanley Brown, also helped till the disputed land as a garden from 1936 until Mr. Stanley Brown erected a building thereon for the telephone company in 1939. Mr. Stanley Brown in 1939 leased the building and the disputed land to the telephone company and these leases are still in effect. Mr. Ervin admits that he did not know that the disputed land was contained in his deed and that he had never exercised any ownership over the disputed land or occupied it.

Appellants contend that from the testimony it is impossible to arrive at a determination of how much of the land in dispute was used and occupied by the appellees' decedent and his lessees because no witness could testify with any degree of certainty how near the privet hedge the various occupants had occupied the disputed land. There is credible evidence that the telephone company, as lessee, has occupied all of the disputed property since 1939. From 1929 to 1939 there is credible evidence that all of the disputed land was occupied and used as a garden by the appellees' decedent or his lessees within from five to twelve feet of the hedge. The reason this small strip was not plowed was because the tree roots along the hedge prevented the plowing. Even if this strip of land had not been plowed, it is reasonable to assume that it was necessary for the tiller of the garden to use the unplowed strip as an adjunct to the garden for the purpose of walking around the garden, tilling it, and carrying out the produce. Certainly the appellants never occupied this strip or exercised any dominion over it.

The appellants further contend that because all the evidence clearly indicates that possession by the appellees' decedent was taken under a mistake as to the boundary line and because neither the appellees' decedent nor his wife knew until 1946 the true boundary line and had no intention of encroaching upon the land

of their neighbors, the appellants herein, the appellees have not acquired title by adverse possession. This contention is answered by the case of *Tamburo v. Miller*, 203 Md. 329, 336, 337, before the appeal was taken in this case. Judge Hammond said in that case: "It has been said often in the earlier cases that where a land owner extends his fence, through inadvertence, ignorance or mistake, as to the location of the true boundary line, so as to embrance the land of a neighbor, but with no intention of claiming the area thus enclosed, adverse possession cannot be established because the holding of the extended area is neither adverse nor hostile to the true owner. See, for example, *Davis v. Furlow's Lessee*, 27 Md. 536. [Of course, in the instant case the boundary line, the hedge, was planted by the appellants, thinking that this was their true boundary.] The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial. See *Sadtler v. Peabody Heights Co.*, 66 Md. 1; *Rother v. Trustees of Sharp St. Station of Methodist Church*, 85 Md. 528, 530; and *Hiss v. McCabe*, 45 Md. 77. In *Jacobs v. Disharoon*, 113 Md. 92, the court held that one who continuously asserts ownership within an enclosure for more than twenty years in exclusive, notorious and actual hostile possession, would not be required to surrender the title by adverse possession merely because of his possession by mistake. The distinction seems to be that if the limits of the occupation be fixed with the intention of claiming them as *the* boundary line, the statute runs; but if the occupation and delineation of the boundaries appear to be merely provisional, with the intent to claim them as boundaries, if they are found to be proper boundaries, then the statute does not run.

144

See 3 *Washburn, Real Property*, 6th Ed., Section 1968; and *Tiffany, Real Property*, 3rd Ed., Vol. 4, Section 1159". See also *Hub Bel Air, Inc. v. Hirsch, et al.*, 203 Md. 637. There is substantial evidence here from which the trial judge could have found that the visible boundaries have existed for the period of more than twenty years and that unequivocal acts of dominion were asserted by the appellees. Even though the occupation by the appellees was due to ignorance and mistake, from the above authority this fact is immaterial. The occupation by the appellees' decedent could not be considered to be provisional. He built a building on the disputed property. This is not the act of a provisional occupier. The judgment will be affirmed.

*Judgment affirmed, with costs.*