475 A.2d 1185

William **COSTELLO**

v.

Elmer V. **STAUBITZ.**

No. 3, Sept. Term, 1983.

Court of Appeals of Maryland.

June 7, 1984.

Thomas C. Codd and Downie D. Codd, Severna Park, for appellant.

Paul M. Anderton, Annapolis, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

This case concerns the appropriate inferences to be drawn from the existence of a visible line of demarcation when determining a claim of adverse possession. More particularly, the question presented is whether a fence erected by a predecessor in interest to the record owner of real property constitutes some evidence of the claimant's adverse possession.

In 1955, the respondent, Elmer V. Staubitz (claimant), acquired title to lot 232 located at Whitehall Beach. A residence, built between 1925 and 1935 by the claimant's predecessor in interest, his father, was located on the lot.

In October 1979, the petitioner, William Costello, and his wife, Janice F. Costello (record owners), acquired title to an undeveloped lot, lot 233. Lot 233 is adjoined on the east by lot 232. Both lots 232 and 233 are bounded on the north by Red Cedar Road and on the south by the Whitehall River.

In April 1980, the record owners employed a surveyor, who determined the precise eastern boundary of lot 233 and placed stakes along the deeded property line. As a result, it became apparent that an existing barbed wire fence, extending from Red Cedar Road to the Whitehall River, which had been erected in about 1940 by a predecessor in interest to the record owners, was not located along the eastern boundary of lot 233. Rather, it traversed the southeastern corner of lot 233 and the northwestern corner of lot 232. As a result, two triangles of land were formed. One triangle, located on lot 232, was bounded on the east by the barbed wire fence, on the north by Red Cedar Road, and on the west by the staked property line. The other triangle, located on lot 233, was bounded on the east by the staked property line, on the south by the Whitehall River, and on the west by the barbed wire fence. This latter triangle, located on lot 233, constitutes the disputed property.

On 17 September 1980, in the Circuit Court for Anne Arundel County, the claimant filed a suit to quiet title, asserting that he had acquired title to the disputed property

by adverse possession. The record owners filed an answer stating that they had "a claim of record to the property in question," and that they were actually asserting "an outstanding claim to said land."

At a bench trial, the claimant, himself, presented the only evidence relating to the erection of the fence. He stated that the fence was erected by a farmer, who was the record owners' predecessor in interest. Additionally, the claimant stated that the farmer's sole purpose for erecting the fence was to confine his cattle to his own property, lot 233, and to prevent them from straying onto the adjoining property, lot 232.

Moreover, there was some evidence presented intended to show that the claimant had acquired title to the disputed property by adverse possession. The claimant and several neighbors testified that they believed that the claimant owned all of the land up to the fence. Additionally, a portion of the disputed property was left in its natural state and was used by the claimant as an animal sanctuary for rabbits, squirrels, and birds. In the 1940s, the claimant and his predecessor in interest, his father, planted several poplar tree cuttings on the disputed property along the fence. Two of these trees are still standing. In the 1950s, a cement and concrete block firepit was constructed that was used for burning rubbish and for barbecues. This firepit was not permanently affixed to the ground and was occasionally moved from one location to another on the disputed property. Moreover, in the 1950s, a shed, alternatively described as a "boathouse," "outhouse," or a combination thereof, was constructed on the disputed property. The claimant and several neighbors testified that the shed had continuously remained in the same location since its construction.[1]

---

1. This evidence was contradicted by a photogrammetrist who testified on behalf of the record owners that, in his opinion based on aerial photographs taken of the disputed property in 1962 and 1963, no shed existed on the disputed property during those years. The photogram-

Additionally, there was evidence to show that for approximately five years during the 1950s, the claimant had used a portion of the disputed property as a site for a boat railway, consisting of a set of logs used to roll boats from the water onto shore. Moreover, in the 1970s, the claimant extended his pier so that a portion of it was located in an area of the water bounded by an extension of the boundaries of the disputed property. Finally, since approximately 1975, the claimant utilized a portion of the disputed property as a burial plot for a pet.

The trial court issued a memorandum opinion in which it found that the fence erected by the record owners' predecessor in interest was erected as a boundary between lots 232 and 233, and delineated the extent of the claimant's adverse possession. More particularly, the trial court said:

> "[I]t is also uncontroverted that the fence upon which [the claimant] bases his claim was originally erected as a boundary between lots 232 and 233. The testimony at trial revealed that the fence was installed by [the record owners' predecessor in interest] to keep their cows from going on to [the claimant's] father's property. It also revealed that *the fence was intended, and did serve as the boundary of the two lots.*" (Emphasis added.)

With respect to actual possession, the trial court said:

> "To show actual possession so as to give rise to the acquisition of title by adverse possession there must be some unequivocal act or acts of ownership on the land itself.... [The claimant] (at the least) planted trees, buried his pets, built (and moved) an outdoor fireplace and maintained a boat and boathouse within the disputed property. In every sense of the term, [the claimant] treated the disputed land as his own."

After determining that all of the other elements of adverse possession were present, the trial court said:

---

metrist additionally testified that a shed was located on the disputed property subsequent to 1970.

"In this case [the claimant] used the land as his father had until his life circumstances caused him to change the character of the home from a vacation home to a residence. *The fence erected as a boundary to his property delineated the extent of his possession.* This Court is of the opinion that [the claimant] did acquire title to the disputed strip of land by adverse possession." (Emphasis added.)

On 30 November 1981, the trial court entered a final order stating that the claimant had acquired title to the disputed property by adverse possession.

An appeal was filed to the Court of Special Appeals. In determining that the claimant had acquired title to the disputed property by adverse possession, the Court of Special Appeals, in an unreported per curiam opinion, *Costello v. Staubitz*, No. 57, September Term, 1982, filed 16 November 1982, said:

"The court below found that the fence, which was constructed to keep cattle from going onto the [claimant's] property, *was intended and did serve as a boundary between the two lots.* [The record owners, relying upon *Storr v. James*, 84 Md. 282, 35 A. 95 [965] (1896)], suggest that the demarcation of the boundary by the fence is irrelevant because it was not erected by the party claiming title by adverse possession.

. . . . .

[Claimant] . . . cannot assert as his own unequivocal act of ownership the erection of a fence by [record owners'] predecessor in title, the party against whom the claim is asserted. This rule, however, has to a great extent given way to a modern trend which simply suggests that *where visible boundaries have existed for the statutory period, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership;* it is immaterial that possession was due to inadvertence, ignorance, or mistake and actual enclosure is not necessary to establish title. *Freed v. Cloverlea Citizens Association, Inc.,*

246 Md. 288, 228 A.2d 421 (1967). It is immaterial, therefore, that a mistake was originally made by [the record owners' predecessor in interest] in establishing the cattle fence as the boundary line.

"There was sufficient evidence before the court below to conclude that *the fence and tree line existed as a visible boundary* for the statutory period and that [the claimant's] maintenance of the firepit, shed, pet cemetery, boat and railway constituted unequivocal acts of ownership sufficient to put ... the record owner on notice of the encroachment." (Emphasis added.)

The Court of Special Appeals affirmed the judgment of the trial court.

A petition for a writ of certiorari was filed that we granted. We shall reverse the judgment of the Court of Special Appeals.

 To establish title by adverse possession, the claimant must show possession of the claimed property for the statutory period of 20 years.[2] Such possession must be actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted. *East Washington Railway Co. v. Brooke*, 244 Md. 287, 294, 223 A.2d 599, 603–04 (1966); *Goen v. Sansbury*, 219 Md. 289, 295, 149 A.2d 17, 21 (1959); *Peper v. Traeger*, 152 Md. 174, 181, 136 A. 537, 540 (1927); *Baker v. Swan*, 32 Md. 355, 361 (1870). The burden of proving title by adverse possession is on the claimant. *Hungerford v. Hungerford*, 234 Md. 338, 340, 199 A.2d 209, 210–11 (1964); *White v. Hardisty*, 220 Md. 152, 158, 151 A.2d 764, 768 (1959); *Louis Sachs & Sons v. Ward*, 182 Md. 385, 389, 394, 35 A.2d 161, 163, 165 (1943).

---

2. Md.Code (1974, 1980 Repl.Vol.) § 5–103 of the Courts and Judicial Proceedings Article provides in pertinent part:
 "§ 5–103. Adverse possession....
 "(a) ... Within 20 years from the date the cause of action accrues, a person shall:
 "(1) File an action for recovery of possession of a corporeal freehold or leasehold estate in land; or
 "(2) Enter on the land."

■ Generally, adverse possession without color of title extends only to the land actually occupied. *Rogers v. Burnopp*, 263 Md. 357, 363, 283 A.2d 367, 371 (1971); *Hines v. Symington*, 137 Md. 441, 444, 112 A. 814, 816 (1921); *Hackett v. Webster*, 97 Md. 404, 408, 55 A. 480, 481 (1903). However, where visible boundaries have existed for the statutory period of limitations, if there is evidence of unequivocal acts of ownership, title will vest in the claimant, not only to land actually occupied, but rather to all of the land delineated by the visible boundary. *Rogers*, 263 Md. at 363, 283 A.2d at 370–71; *Supreme Builders, Inc. v. Redmiles*, 250 Md. 446, 455, 243 A.2d 500, 505 (1968); *Mauck v. Bailey*, 247 Md. 434, 441–42, 231 A.2d 685, 690 (1967); *Freed v. Cloverlea Citizens Ass'n, Inc.*, 246 Md. 288, 297, 228 A.2d 421, 427 (1967); *Blickenstaff v. Bromley*, 243 Md. 164, 172, 220 A.2d 558, 562 (1966); *Bishop v. Stackus*, 206 Md. 493, 499, 112 A.2d 472, 474 (1955); *Ridgely v. Lewis*, 204 Md. 563, 567, 105 A.2d 212, 213 (1954); *Ervin v. Brown*, 204 Md. 136, 143, 102 A.2d 806, 810 (1954); *Tamburo v. Miller*, 203 Md. 329, 336, 100 A.2d 818, 821 (1953).

Here, the claimant contends that an existing fence constitutes a visible boundary and that because of unequivocal acts of ownership, title to all of the disputed property, the land delineated by that visible boundary, vested by adverse possession. In opposition it is contended that the fence does not constitute a boundary and that, consequently, adverse possession extended only to such land, if any, as was actually occupied by the claimant. We agree with the latter contention.

In *Storr v. James*, 84 Md. 282, 35 A. 965 (1896), this Court considered the question of the appropriate inferences to be drawn from the existence of a visible line of demarcation, a fence, when determining a claim of adverse possession. There, Chief Judge McSherry, writing for a unanimous court, stated:

"The instruction complained of told the jury that if they found the land in dispute was within the lines of the [record owner's] deeds, and that if the [record owner] for

his own purposes erected a fence within his lines, that then such 'fence is not an enclosure of the [claimant] and does not afford evidence of adverse possession in the [claimant] by enclosure.' This is self-evident. An actual enclosure though not necessary to prove possession (Code, Art. 75, sec. 76) is, when erected by a party relying on a title by prescription, some evidence tending to show the character of his claim. It is his own affirmative act. It is given effect as evidence merely because it is his and no one else's act. It defines the extent of his claim and marks the outlines of his actual holdings. But where some one else under whom the [claimant] does not claim and with whom the [claimant] is not in privity of estate, erects a fence 'for his own purposes,' within his own lines, obviously such a fence is, of itself, not an enclosure of the [claimant], and its construction is referable to no act or claim of the [claimant] at all, and consequently cannot be relied on by him to show an adverse possession in himself by enclosure. This is necessarily so when the hypothesis of the prayer sets forth, as in this case, that the fence was erected by the [record owner] within his own lines 'for his own purposes.' If the jury found that the fence was erected by the [record owner] for his own purposes, then they could not conclude that it was an enclosure of the [claimant] or that it afforded evidence of possession by the [claimant] by enclosure." *Storr,* 84 Md. at 290–91, 35 A. at 967.

This case establishes that in determining a claim of adverse possession, the appropriate inference to be drawn from the existence of a fence is dependent upon whether the record owner or the claimant erected the fence and the purpose for which the fence was erected. The existence of a fence, erected by the record owner within the record owner's land and for the record owner's own purposes, does not support an inference that the fence is a visible boundary delineating the extent of a claimant's adverse possession. It, therefore, does not constitute evidence of the claimant's adverse pos-

session.[3] *But see Ervin v. Brown,* 204 Md. 136, 144, 102 A.2d 806, 810 (1954).

In *Tamburo v. Miller,* 203 Md. 329, 100 A.2d 818 (1953), this Court, in determining the validity of a claim of adverse possession, considered the inference to be drawn from the existence of a visible line of demarcation, a fence, erected by a party claiming adverse possession. There, Judge Hammond, writing for a unanimous court, stated:

"It has been said often in the earlier cases that where a land owner extends his fence, through inadvertence, ignorance or mistake, as to the location of the true boundary line, so as to embrace the land of a neighbor, but with no intention of claiming the area thus enclosed, adverse possession cannot be established because the holding of the extended area is neither adverse nor hostile to the true owner. *The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will*

---

**3.** Courts in some other jurisdictions that have considered similar questions have reached the same result. *See, e.g., Brown Paper Mill Co. v. Warnix,* 222 Ark. 417, 419, 259 S.W.2d 495, 495 (1953); *Hankey v. Van Scyoc,* 338 Ill. 533, 536, 170 N.E. 749, 750 (1930); *Dambach v. James,* 587 S.W.2d 640, 643 (Mo.App.1979); *Buchanan v. Nixon,* 163 Tenn. 364, 370, 43 S.W.2d 380, 382 (1931); *DeArman v. Surls,* 618 S.W.2d 88, 91–92 (Tex.Civ.App.1981). *But see, Darby v. Robbins,* 409 So.2d 722, 725 (Ala.1982); *Marvel v. Barley Mill Road Homes, Inc.,* 34 Del.Ch. 417, 424, 104 A.2d 908, 912 (1954). Illustrative is the case of *Buchanan v. Nixon,* 163 Tenn. 364, 370, 43 S.W.2d 380, 382 (1931), where the Supreme Court of Tennessee said:
"The statute ... which cuts off the right to recover lands unless suit is brought 'within seven years after the right of action has accrued,' may well be held to begin to run ... from the time one enters and erects a fence over on an adjoining owner's land, although by mistake as to the true line; but this rule may not apply when the reverse is true; that is, where the erection is made on his own land by the adjoining owner within his true boundary without thought of fixing the line. If A erects a wall or fence across or along his lot on any given line, whether one or twenty feet from the true boundary, without any purpose to fix a boundary line, it could hardly be insisted that he thereby sets in motion the running of the statute in favor of the adjoining owner to that part of A's land lying outside of his improvement."

*vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder [adverse possessor] supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial.* In *Jacobs v. Disharoon,* 113 Md. 92, 77 A. 258, the court held that one who continuously asserts ownership within an enclosure for more than twenty years in exclusive, notorious and actual hostile possession, would not be required to surrender the title by adverse possession merely because of his possession by mistake. *The distinction seems to be that if the limits of the occupation be fixed with the intention of claiming them as the boundary line, the statute runs; but if the occupation and delineation of the boundaries appear to be merely provisional, with the intent to claim them as boundaries, if they are found to be proper boundaries, then the statute does not run."* *Tamburo,* 203 Md. at 336, 100 A.2d at 821 (citations omitted) (emphasis added).

This case demonstrates that in determining a claim of adverse possession, the appropriate inference to be drawn from the existence of a visible line of demarcation, a fence, erected by a party claiming adverse possession is dependent upon the purpose for which the fence was erected. A fence erected by a claimant for the purpose of claiming it as a boundary only if it is in fact coincident with the actual boundary does not support an inference that it is a visible boundary delineating the extent of the claimant's adverse possession and, therefore, does not constitute evidence of the claimant's adverse possession. However, a fence erected by a claimant for the purpose of claiming it as a boundary supports such an inference and, therefore, constitutes some evidence of the claimant's adverse possession, notwithstanding that the claimant's belief that the fence was in fact coincident with the actual boundary was erroneous. Similar results have been reached in other cases.

*E.g., Supreme Builders, Inc.,* 250 Md. at 455, 243 A.2d at 505 (bushes); *Mauck,* 247 Md. at 441–42, 231 A.2d at 690 (fence); *Bishop,* 206 Md. at 499, 112 A.2d at 475 (garage, driveway, shrubs).

In *Ridgely v. Lewis,* 204 Md. 563, 105 A.2d 212 (1954), this Court, in determining the validity of a claim of adverse possession, considered the impact of the existence of a visible line of demarcation, a fence, where there was no evidence to show by whom and for what purpose the fence was erected. This Court treated the fence as a visible boundary. There, this Court said:

> "[I]n the instant case, there is to be found that there was nothing provisional in the holding and use of Parcel A. [The claimants] and their predecessors in title undoubtedly believed the land to be theirs and held it and used it as theirs for the necessary period. There was a continuous fencing plainly to be observed from a nearby road and the land was used both for pasture and for the planting of crops." *Ridgely,* 204 Md. at 567, 105 A.2d at 213–14.

The Court then held that as a result of unequivocal acts of ownership, the claimants had acquired title by adverse possession to all of the land delineated by the visible boundary, the fence. This case demonstrates that the existence of a visible line of demarcation, a fence, in the absence of evidence to show by whom and for what purpose it was created, supports an inference that it is a visible boundary delineating the extent of a claimant's adverse possession. It, therefore, constitutes some evidence of the claimant's adverse possession. Similar results have been reached in other cases. *E.g., Rogers,* 263 Md. at 362–63, 283 A.2d at 370–71 (right-of-way); *Freed,* 246 Md. at 291, 297–98, 228 A.2d at 424, 427–28 (natural ditch); *Blickenstaff,* 243 Md. at 172, 220 A.2d at 562 (road).

■ The following general principles emerge from this Court's previous decisions in adverse possession cases in which a visible line of demarcation was a factor:

1) The existence of a visible line of demarcation ordinarily does not constitute evidence of adverse possession when:

a) it was created by a record owner, for the record owner's own purposes, within the record owner's land, *Storr*, 84 Md. at 290–91, 35 A. at 967; or

b) it was created by a party claiming title by adverse possession for the purpose of claiming the visible line of demarcation as a boundary only if it is in fact coincident with the actual boundary, *Tamburo*, 203 Md. at 336, 100 A.2d at 821.

2) The existence of a visible line of demarcation ordinarily constitutes some evidence of adverse possession when:

a) it was created by a party claiming title by adverse possession for the purpose of claiming the visible line of demarcation as a visible boundary delineating the extent of the claimed adverse possession, *Tamburo*, 203 Md. at 336, 100 A.2d at 821; or

b) there is no evidence to show by whom and for what purpose the line of demarcation was created, *Ridgely*, 204 Md. at 566–67, 105 A.2d at 212–13.

We shall apply these principles in this case.

 Here the record shows that the claimant was without color of title and claimed all of the land delineated by the existing barbed wire fence. The only evidence presented relating to the fence was that it was erected by a farmer who was the record owners' predecessor in interest. The farmer's sole purpose for erecting the fence was to confine his cattle to his own property, lot 233, and to prevent them from straying onto the adjoining property, lot 232. Thus, the record shows that the fence on the disputed property was erected by the record owners' predecessor within the predecessor's own boundaries and for the predecessor's own purposes. Under these circumstances, the existing fence was not a visible boundary delineating the extent of

the claimant's adverse possession. It, therefore, did not constitute evidence of adverse possession and was not an appropriate factor to be taken into account in determining the extent of the claimant's adverse possession. The trial court's finding that the fence was "originally erected as a boundary between lots 232 and 233" and was "intended and did serve as the boundary of the two lots" was unsupported by the record and, therefor, clearly erroneous. Md.Rule 886. Additionally, the trial court erred in concluding that the fence "delineated the extent of [the claimant's] possession" and that the claimant acquired title by adverse possession to all of the land delineated by the fence. Accordingly, the judgment of the Court of Special Appeals shall be reversed.

█ Because the fence, although visible, did not constitute a boundary, the principle that unequivocal acts of ownership vest title in a claimant to all of the land delineated by a visible boundary is inapplicable. Rather, the applicable principle is that the claimant, who was without color of title, is entitled to acquire title by adverse possession only to land actually occupied. The trial court did not make any finding as to what, if any, land was actually occupied by the claimant for the statutorily prescribed twenty-year period. Under these circumstances, the case shall be remanded for further proceedings in accordance with this opinion.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.

CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

RESPONDENT TO PAY COSTS.