# MAYOR AND TOWN COUNCIL OF NEW MARKET
## ET AL. *v.* WILLIAM J. ARMSTRONG
### ET UX.

[No. 787, September Term, 1978.]

*Decided April 16, 1979.*

228

The cause was argued before MOYLAN, LOWE and MASON, JJ.

*Mary E. Storm* for appellant Mayor and Town Council of New Market. *Peyton Paul Phillips* for other appellants.

*James W. Hane* and *H. Warren Buckler* for appellees.

LOWE, J., delivered the opinion of the Court.

On July 19, 1974, William J. and Jane P. Armstrong purchased a property upon which stood an old schoolhouse. The deed described the land as "consisting of Lot No. 84 and Lot No. 85 situate in Hall's Part of the Town of New Market containing one-half (½) acre of land, more or less." The reference to "Hall's Part of the Town" derived from Nicholas Hall who must have been among the first subdivision developers. In 1793, he laid out the proposed Town of New Market on a recorded plat, dedicating the streets and alleys thereon to the use of the public forever.

Lot No. 85 was bordered on its western boundary by Federal Street and on its eastern boundary by Lot No. 84. Both of these lots abutted North Alley as their northernmost boundaries. A substantial portion of the adjoining Federal Street and of North Alley constituted the concern of this appeal. Indeed, the old schoolhouse had been constructed over a substantial part of Federal Street, and over a portion of North Alley as well.

Upon complaint of the Armstrongs under the Maryland Uniform Declaratory Judgment Act, the Circuit Court for

Frederick County declared the couple had acquired substantial portions of the described street and alley by adverse possession. In order to clarify the portion so proclaimed, the court included in its order not only a metes and bounds description but a plat clearly designating those portions so obtained. We reproduce that plat at this juncture to facilitate a clearer understanding of that which will follow:

Pursuant to Md. Rule 1028.g., the parties stipulated to a statement of undisputed facts and exhibits narratively summarizing the testimony. To ease our burden of review still further, they synopsized their summary. That synopsis is brief enough to include, yet enlightening enough to add understanding to the issues raised:

"In 1793 Nicholas Hall executed and recorded a plan and plat for a proposed town, the Town of New Market. The recorded plan specified, *inter alia,* that 'I the said Nicholas Hall do hereby agree to give the Alleys as now laid out, for the use of the public forever, also the streets, and that I shall never hereafter lay any claim to the same nor my Heirs and Assigns.'

In 1878 the Town of New Market was incorporated. There appears to be no specific record whereby the Town formally accepted the Hall dedication of the streets and alleys. Recently, however, Hall's plat was used in connection with the Town's zoning regulations and master plan, the latter recommending improvement of some streets and abandonment of others.

In 1974, William J. Armstrong, et ux, purchased Lots Nos. 84 and 85 as designated on the Hall plat which were improved by a structure which was formerly a school house. Prior to the purchase, the Armstrongs knew that the structure located on the premises encroached upon the right of ways of Federal Street and North Alley. Mr. Armstrong also testified that he was familiar with the Hall plat prior to the Armstrongs' purchase of the lots.

In 1976 the Armstrongs instituted these proceedings seeking, in essence, to quiet title to their real property. The evidence produced showed that they had fee simple title to Lot 84, but that the leasehold and reversionary estates in Lot 85 never merged.

The encroachment by the school building onto the street and alley apparently occurred in 1939 when the School Board caused another school to be physically moved to the site of the old building. It was placed in front of the building by the contractor and another classroom was added, making it into a two-classroom school house.

The Armstrongs, apparently to establish their ownership of one-half of the bed of North Alley and one-half of the bed of Federal Street, presented evidence to show the nature and extent of the use of the premises as a school facility. Such evidence indicated that a flower bed was planted at the front of the school house; that children walked upon Federal Street and North Alley to get to the school; that a parking place was established in front of the school for the buses to use when unloading the children; that the school children played on Federal Street and North Alley; that North Alley east of Federal Street is not constructed and that in the area where the alley should be there are large trees and natural growth as well as a farm fence, owned by the Brinkleys, running east-west which partly encroaches into the North Alley right of way. The farm fence which partly encroaches in North Alley has been in the same location for at least 60 years. The testimony of life long residents clearly showed Federal Street and North Alley have been considered as alleys until the present day.

The Town and the Brinkleys, to establish the pre-1939, as well as post-1939 acceptance of the Nicholas Hall dedication of the streets and alleys by public use over a long period of time, presented similar evidence, viz. the testimony of New Market residents showed that parts of the streets and alleys were generally travelled and used by the public. Such evidence indicated that parts of Federal Street and North Alley were used in delivering newspapers to residents of that area in the 1920's; that flat

stones were placed on the west side of Federal Street for the pedestrians; that at one time horse stables were maintained on North Alley east of Lots 84 and 85 and that users of the stables travelled upon Federal Street and North Alley.

Other evidence showed that originally the streets and alleys of New Market, including Federal Street and North Alley, were dirt, then tar and chips, then gravel and finally paved in part of the width. Such improvements and the general maintenance and snow removal of such streets was undertaken and performed by the Town. The paving of Federal Street and North Alley is approximately 12 feet wide and occurred in the 1950's. In the 1960's, the Frederick County Metropolitan Commission constructed sewer lines in the bed of the right of ways of Federal Street and North Alley, partly beneath the paved roadways."

The issues raised on appeal assign error to the judgment for at least five reasons which include:

1. the Nicholas Hall restrictive covenant, running with the land, not to lay claim to streets or alleys, was known to appellees;
2. relief granted by adverse possession was contrary to the theory of relief prayed;
3. propriety of the finding of adverse possession against a municipality;
4. clear factual error (sufficiency) in finding adverse possession; and
5. improper tacking to carry the adverse possessory right to appellees.

To the extent appellants attack the factual findings of the court we are not impressed. Our review of the record indicates that there was sufficient evidence from which the court could have found that appellees' predecessors in interest (to which we will generally refer as the Board of

Education) [1] had fulfilled the requisites of adverse possession. Md. Rule 1086; *Rogers v. Burnopp,* 263 Md. 357, 360 (1971). This factual attack was the primary focus of an intervening party below, G. Ross Brinkley, et ux., who also appealed. The Brinkleys contend as well that the court erred in overruling their motion for summary judgment. Because we have found sufficient facts upon which the court could have reached its result, it follows necessarily that there were sufficient facts in dispute to have justified denying summary judgment.[2] *See Broadfording Ch. v. Western Md. Ry.,* 262 Md. 84, 88-89 (1971).

— remedy contrary to relief prayed —

Responding first to the procedural assault that neither the specific relief of adverse possession, nor a general relief prayer sufficient to encompass it were prayed, it has been held that when there is a justiciable issue presented by a bill of complaint or declaration seeking declaratory relief,

> "a declaration should be given even if it is not the declaration sought by the plaintiff and, indeed, is entirely or partially contrary to the theory of the plaintiff on which declaratory relief is sought." *Woodland Beach Ass'n v. Worley,* 253 Md. 442, 448 (1969).

That is precisely what occurred here. Pursuant to the Maryland Uniform Declaratory Judgment Act, the appellees asserted their ownership of the street and alley under and by virtue of Md. Real Prop. Code Ann. § 2-114 (1974):

---

1. Board of Education of Frederick County, formerly Primary School for District No. 62 (held by trustees Jacob Cronise, Eldrid W. Moberly and George Hughes and their successors), conveyed fee simple interest in Lots 84 and 85 to Messrs. Frenkil and Palmer, co-partners, who in time conveyed the property to the Armstrongs.

2. To the extent that the Brinkleys rely upon a factual foundation based upon failure of appellees to answer timely an admission of fact request, we decline to address intervenor's argument. That issue in support of their summary judgment motion was not argued below and we will not address it for the first time on appeal. Md. Rule 1085.

> "Unless a contrary intention appears in the deed, will, or other instrument, if any deed, will, or other instrument grants or bequeaths land binding on any street or highway, or if any street or highway is one or more of the lines of the land, the deed, will, or other instrument passes to the legatee, donee, or grantee, all the right, title, and interest of the testator, donor or grantor in the street or highway. Except that to the extent the testator, donor, or grantor owns other land on the opposite side of the street or highway, the deed, will, or other instrument passes the right, title, and interest of the testator, donor, or grantor only to the center of that portion of the street or highway on which the two or more tracts coextensively bind."

They then contended that since their property abutted the street and alley which were dedicated but never accepted, their title ran to the center of the street and alley. The court did not agree with that premise. It held that the statute was not in being at the time of dedication and the theory of appellees fell with that finding.

> "I cannot rule — I don't think it is the law — that the plaintiffs own one-half (½) of the bed of Federal Street bordering lot 85 subject only to a 5 foot public easement therein. In the first place, the public easement in front of Federal Street is wider than that by the very paving. In addition, I don't find it to be the law prior to the statute that when you convey lots with reference to a plat, this automatically carries ownership to the center of a bordering street that isn't even mentioned in the deed."

But the court further found that there was no formal acceptance of the dedication at the time of the encroachment by the Board of Education (and its predecessor) in 1939, nor during the prescriptive period. The court set forth its general factual findings (see n.2, *supra*) and, subsequently, its more

defined determination of precisely what was acquired by the adverse possession. These findings culminated in the final decree. As can be seen from the plat which the court appended to that decree, the portions for the acquired roadbeds include over half of the ways on both Federal Street and North Alley.

— sufficiency of adverse possession evidence —

The court's defined area finding was predicated upon that which it determined had been used by appellees' predecessors in title, the Board of Education (and its predecessor in purpose), for the prescribed adverse possessory period. The deed describes simply Lots No. 84 and 85 as depicted on the Hall plat and alludes not in the slightest to the additional land in the street beds which was found to be acquired by the Board through adverse possession.

(Lot 85)

Addressing the question of evidentiary sufficiency, appellants claim that the Board did not fulfill the elements of adverse possession to Lot 85, stating that appellees failed to show that the Board held the land in a hostile, nonpermissive posture. With respect to Lot 85, appellants submit that appellees needed to show nonpayment of "ground rent" for the requisite period in order to claim ownership. Their argument follows from a showing that Christian Harding, a predecessor of the Board, had acquired both the leasehold and reversionary interests to Lot 84 (which could then merge by operation of law to vest fee simple ownership in the holder), but only held the leasehold interest for Lot 85. In 1839, however, Harding quitclaimed "all of his interest" in Lots 84 and 85 to the Primary School for District No. 62 (forerunners of the Board of Education of Frederick County). The Board conveyed the land in the 1960's in fee simple to Messrs. Frenkil and Palmer, who subsequently conveyed to the Armstrongs the same fee simple title.

Since the chancellor held that the Board had acquired a fee simple title to both lots, the question of title to Lot 85 which

is tangentially raised by the Town, is (if to be answered at all) one to be decided under the clearly erroneous rule. Md. Rule 1086. Despite the fact that Harding conveyed title to both lots by quitclaim deed, and only one lot appeared to be held by him in fee, the chancellor empirically concluded that the Board accepted the title to both lots as being in fee simple.

> "It is inconceivable . . . that the commissioners of those days would have bought lots with the intention of putting up a primary school on those lots had there been ground rents outstanding."

That the Board had so assumed is supported by its transfer of the property to Frenkil, *et al.* (and they to Armstrong) in fee simple. Those deeds alone were prima facie evidence of what they purported to convey, *cf. Harmon v. State Roads Comm.,* 242 Md. 24, 32-34 (1966); *Siemiesz v. Amend,* 237 Md. 438, 440 (1965), and all of this was supported by the opinion of Armstrongs' title examiner as set forth in the stipulated facts:

> "that the Armstrongs had good fee simple title to both lots 84 and 85." [3]

Since neither the Town nor the intervenor had any claim or interest in Lot 85 but for its proximity to the adjacent roadbeds, neither is a proper party to attack the validity of the ruling as related to Lot 85; *see Taussig v. Van Deusen,* 183 Md. 436, 441-442 (1944), nor may they complain at this late date that a possible proper party, or even necessary party is not before the court to do so.

To the extent that the intent to possess adversely the adjacent roadbeds claimed by the Town is interwoven through the need to ascertain the state of mind of the possessors and conveyors of the lots, the Town has a valid concern; but it does not go beyond those states of mind.

(the adjoining land possessed)

The court's boundary lines indicating the land that was

---

3. The expert qualified his assertion as resting on an initial title search starting in 1839. He said he could not make a definite statement as to Lot 85 based on the search back to 1795.

adversely possessed, extended beyond Lots 84 and 85, and included parts of Federal Street and North Alley. The judge found that the Board also acquired ownership of those additional areas by adverse use. Although the street and the alley had been dedicated to the public use by Nicholas Hall, the judge found that no acceptance had been effected. In *Mauck v. Bailey,* 247 Md. 434 (1967), the Court of Appeals stated that dedication "presents no impediment . . . to the acquisition of property by adverse possession where the public has never accepted the offer of dedication." *Id.* at 443.

— dedication —

At the heart of the court's rulings was its factual findings as to what part, if any, of Nicholas Hall's street and alley, dedication had been accepted by the public. Clearly a dedication to public use is no more than an offer until it is accepted. *Hackerman v. City of Baltimore,* 212 Md. 618, 624 (1957); *Harlan v. Bel Air,* 178 Md. 260, 265 (1940). This prevents subdividers from forcing road maintenance upon the public against its will. *Kennedy v. Mayor, & C., of Cumberland,* 65 Md. 514 (1886). Obviously, there being no municipality at the time of Nicholas Hall's dedication in 1793, no formal acceptance was effected, and the absence thereof, even after New Market assumed that status, was conceded. The Town argues, however, that an acceptance was effected by public users.

The court found otherwise. Regarding North Alley, only that portion east of Federal Street is involved here. The agreed statement of facts indicates that the only use thereof was by those involved in the educative purpose to which the owner of the adjoining lots, the Board of Education, had devoted the abutting property — with but a single exception.

"One man had stables that faced East North Alley east of Lots 84 and 85. He and his visitors regularly used East North Alley to come and go from his stables."

A single adjacent property owner's use is a far cry from a public user sufficient to warrant public acceptance. And so it was that the court found:

> "Now there is no indication whatsoever in the evidence before me that North Alley from its intersection with Federal Street to the east was ever used in any way by the public. There is certainly no indication that the Town of New Market or Frederick County prior to the chartering of the Town of New Market ever formally accepted that portion of North Alley into the public system. So that I would clearly hold also, at the present time, that the Board of Education and its predecessors had a valid fee simple title by adverse possession in North Alley which they did convey to the plaintiffs by virtue of the conveyance of being the same property conveyed to them by so and so in reference to the lots. So I have no problem with that part of North Alley at all. That has clearly been blocked in use and there has never been anything done in that area except use by the Board of Education and the students and predecessors of the Board."

We cannot declare the finding to have been clearly erroneous. Md. Rule 1086.

The court then turned its attention to the pertinent Federal Street portion under contention.

> "Now, I come to a further problem and that is with Federal Street. It is very obvious that there has been more of a use of Federal Street by others than there was in that portion of North Alley that I have just referred to.
>
> I find as a fact that at least from the time of the purchase by the school commissioners in 1839 that there was certainly a pathway in the bed of Federal Street that people, youngsters, sometimes used. There was also a space some period later on, apparently according to one witness, where you

could take a horse and wagon in and go up to North Alley and turn westward and use North Alley. And it would seem to me that it is perfectly clear that the public generally did use that portion of Federal Street to an undetermined but rather narrow width. Other than that, there is nothing to show that there was an acceptance or even an attempted acceptance by the public generally of Federal Street at all up until such time as the Town of New Market decided to pave a portion of it and up until the time that the Metropolitan Commission put in the sanitary sewer in that same area. That was an attempted acceptance. No one else objected and I find clearly that the Town has accepted this offer of dedication which I find remained open, at least without objection, for the paving along that particular area.

I think that acceptance also would permit the Town to build or install paving in the full width of Federal Street as shown on the plat with the exception of that portion that — where there is an encroachment of the building. I think when property owners construct in a paper street an improvement such as the Board of Education did, the municipality or the public generally have paved only a portion of the street in front of it, did not undertake to do anything about the balance, I think there was an intention at least for that area of Federal Street not to accept the dedication and I so find.

Now the consequence of this factual law finding is that the property owners, the plaintiffs, may continue their building as it now exists because I think they have acquired the title that the Board of Education had and I think the Board of Education by placing its building and encroaching on that area since 1939 has acquired title by adverse possession because it was no act of the public in any way accepting that portion of Federal Street or the portion of North Alley upon which the building also encroaches. In the absence of acceptance up until

that time it is too late for the Town to undertake to say at this late date when it accepted only a portion in front of that building that they now want to accept the balance."

— all or nothing —

We are not impressed with appellants' argument that partial acceptance necessarily constitutes an acceptance of the whole. Appellants quote from *McRobie v. Town of Westernport,* 260 Md. 464, 469 (1971), indicating that:

"The test of public use is not whether the [parking] lot is used at all times to capacity but whether it is utilized to a substantial degree."

We find *McRobie* totally inapposite. The question in that case had nothing to do with accepting a proposed street dedication; it turned upon whether a property could be sold by the town without special statutory authority. If the land was held proprietarily, it could be; if devoted to governmental — or public — use, it could not. The public use issue there was to determine whether the town must hold what it had, not how it could gain what it had not. The test of public user in the former was qualitative and quantity was of no concern. In determining acceptance of an offer of dedication both factors are reviewed. It is necessary qualitatively to determine if the use was public, and quantitatively to determine the intent of acceptance or the limitations of such intent to accept.

Doctrinally, there is implicitly an intent to use the whole by virtue of a user of a part, but that implication is only in the absence of anything to show a contrary intent. 26 C.J.S. *Dedication,* § 41 b (1956). As indicated, the court here found expressly that by acquiescing to the Board's encroachment and improving and using only a portion of Federal Street, there was a clear intention indicated *not* to accept in whole, but only to accept in part, *i.e.,* the portion actually under public use.

"I think when property owners construct in a paper street an improvement such as the Board of

Education did, the municipality or the public generally have paved only a portion of the street in front of it, did not undertake to do anything about the balance, I think there was an intention at least for that area of Federal Street not to accept the dedication and I so find."

— color of title —

Appellants also argued that even if the Board did acquire the land by adverse possession, the Armstrongs cannot claim ownership of the roadbeds in question absent express mention of said property in the fee simple deed from the Board conveying Lots No. 84 and 85. They cite *Fleischmann v. Hearn,* 141 Md. 463, 468 (1922) and *Hansel v. Collins,* 180 Md. 209, 217 (1942), to indicate that the Armstrongs cannot tack the time of possession by the Board to their own time of possession. These cases are inapposite. Each deals with tacking as a means of tying together two or more successive adverse possessors in order to total the requisite twenty year period. Tacking as such, is not the problem before us.

The chancellor here held that the statutory twenty year period vesting title had uninterruptedly passed while the Board owned the adjacent lots and acquired title to the contested land by adverse use. The question is not one of tacking to reach the statutory period, but whether the disputed portions of the street and alley were transferred under color of title with Lots No. 84 and 85 by the Board to Messrs. Frenkil and Palmer, and in turn by those gentlemen to the Armstrongs. In other words, given the court's finding that title to the property had vested in the Board, the problem of tacking vanishes, and once again the Town overreaches to stake its claim. The property is removed from the Town's reach since the only question becomes whether the Board conveyed the property adversely possessed in the roadbeds along with Lots No. 84 and 85. At this point, the issue is not one the Town can raise as an interested party; the Board and Messrs. Frenkil and Palmer are the only possible parties with an interest in said property. *Cf. Fedder v. Component Struct.*

*Corp.,* 23 Md. App. 375, 381 (1974). Only if the chancellor was wrong in his premise that the Board had acquired title by adverse possession, would the Town have any possible interest sufficient to give it standing to contest the transfer between the parties. It is apparent that if there was nothing conveyed by the Board, it retained the land it adversely acquired. The land could not "revert" to the Town which had been held never to have acquired an interest in it. *See Broadfording Ch. v. Western Md. Ry.,* 262 Md. at 87-88.

Even assuming standing by the Town to raise this question on appeal, we would respond to their contention in the negative. Color of title is not a prerequisite to continuance of adverse possession, it was at most a preferred proof. *Zehner v. Fink,* 19 Md. App. 338, 346-347 (1973). In *Zehner* we responded to just such an argument based in part upon the same authority asserted here by the Town. We pointed out in *Zehner,* and even more strongly later in *Rosencrantz v. Shields, Inc.,* 28 Md. App. 379 (1975), *cert. denied,* 276 Md. 749 (1976), that color of title was not necessary for tacking to provide continuity of possession of land, provided the land in question was contiguous to that described in a deed, and that lands both titled and untitled were part of a close, apparent by reason of physical boundaries such as fences or hedges.

In *Rosencrantz,* we relied upon *Freed v. Cloverlea Assn.,* 246 Md. 288, 299 (1967), where the Court of Appeals adopted the rule quoted from 17 A.L.R.2d, 1128, 1131:

" '... where title by adverse possession is claimed to an area contiguous to that described in the deed or contract, and the whole property, described and not described, was in use by the vendor as a unit, and the fact thereof was apparent by reason of the position of fences, hedges, buildings, etc., the instrument instead of operating to negative the element of privity, seems to possess, as conjoined with such circumstances, and evidentiary value in support of privity, and this is most noticeable in instances in which the description used was such that it might reasonably have been supposed to include the whole property.

'At the present time, making allowance for contrary rulings still apparently adhered to in a few jurisdictions, the cases, especially the later ones, run generally to the effect that in order to permit the tacking of successive adverse possessions of vendor and purchaser of an area not within the premises as described in the deed or contract but contiguous thereto, the composite fact to be established is the intended and actual transfer or delivery of possession of such area to the grantee or vendee as successor in ownership or claim.' "

It is apparent that the land in dispute was physically delineated. (*E.g.,* On North Alley the chancellor found ownership in the Armstrongs by adverse use of their predecessors (the Board) "up to the fence line" and on Federal Street "up to the line that the Town has blacktopped ....", and so on.) A plat was prepared setting such forth. Therefore, although there is no question of tacking the reasoning applied by *Freed* to determine what was transferred is the same.

The "composite fact to be established is the intended and actual transfer ...." After having acquired ownership by adverse use of the disputed land, the Board abandoned any further use or claim after transferring it to the Armstrongs' predecessors, Frenkil, *et al.;* it makes no claim even now, nor do Frenkil, *et al.,* who transferred by identical description to the Armstrongs what they had obtained from the Board. It need hardly be noted that it is the Board's interest (and Frenkil, *et al.*), not the Town's, that is controlling in considering what was being conveyed, and the understanding of the transferees as to what was to be obtained. The conveying instrument did not operate to "negative the element of privity," but rather "conjoined" with the circumstances of abandoning possession of the disputed strips and the simultaneous transfer of the lots, to provide evidentiary value in support of privity.

But that is dicta in the form of alternative reasoning to our holding. Our holding is that the Town cannot successfully question the transfer. Only the Board, and Messrs. Frenkil

and Palmer, can do that in light of the finding of the chancellor that title to the disputed property had vested in the Board by adverse possession. *See Broadfording Ch. v. Western Md. Ry.,* 262 Md. 84.

## — ghosts —

Appellants have exhaustively sought and addressed attacks upon the court's ruling. Admittedly, some of these attacks were spectres which appellants raised only to strike down, *e.g.,* abandonment, use capacity, equitable prescription, laches. We will not address what the court "might have found," a prefatory phrase repeated by appellants as they raised each spectre.

## — *Mauck v. Bailey* —

Appellees point out that many of the relevant contentions of the Town were addressed in *Mauck v. Bailey,* 247 Md. 434 (1967). In lieu of setting out each issue, argument or contention, a simple synopsis of *Mauck's* holdings, which also replied to an insufficiency attack upon an adverse possession ruling, will indicate and dispose of several of the proliferate arguments by the town.

The Court began by dissipating the preclusive effect of some of the requirements of adverse possession, such as "notorious and hostile" possession.

> "In our recent decision in *Freed v. Cloverlea Citizens Association,* 246 Md. 288, 228 A. 2d 421 (1967), Judge McWilliams, for the Court, carefully reviewed the prior decisions of this Court in regard to obtaining title by adverse possession in a case somewhat similar to the present case. He cited *Blickenstaff v. Bromley,* 243 Md. 164, 171, 220 A. 2d 558, 561 (1966), where we quoted with approval from 3 Am. Jur. 2d, *Adverse Possession,* sec. 14, the following:
>
> > 'It is sufficient if the acts of ownership

are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question. The standard to be applied to any particular tract of land is whether the possession comports with the ordinary management of similar lands by their owners, and if so, it furnishes satisfactory evidence of adverse possession.'

In *Tamburo v. Miller,* 203 Md. 329, 100 A. 2d 818 (1953), Judge Hammond (now Chief Judge), for the Court, stated:

'The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial.' "

*Mauck v. Bailey,* 247 Md. at 441-442.

It continued to respond to an argument (as we have here also) that adverse possession cannot be claimed against property offered for dedication to public use. The Court stated:

"Where an implied offer of dedication of this type, or an express offer to dedicate, is accepted by the public, so that the dedication is complete, our decisions have consistently followed the great weight of authority in holding that the dedicated property cannot subsequently be acquired by adverse possession. *Mayor & City Council of Balto.*

246

*v. Chesapeake Marine Ry. Co.,* 233 Md. 559, 572, 197 A. 2d 821 (1964); *Messersmith v. Mayor & Common Council of Riverdale,* 223 Md. 323, 164 A. 2d 523 (1960); *Town Comm'rs of Centreville v. County Comm'rs of Queen Anne's County,* 199 Md. 652, 87 A. 2d 599 (1952); *Brady v. Mayor & City Council of Balto.,* 130 Md. 506, 101 Atl. 142 (1917); *Cushwa v. Burgess & Comm'rs of Williamsport,* 117 Md. 306, 83 Atl. 389 (1912). The rationale of this rule is, of course, that the public is not to lose its rights in the dedicated property through the negligence or inadvertence of government officials who are agents of the public.

This rationale presents no impediment, however, to the acquisition of property by adverse possession where the public has never accepted the offer of dedication. This is the situation in the case at bar. The right-of-way, abutting Mrs. Lester's land, has, since its creation in 1935, never been accepted by the sovereign body, either expressly or through acts giving rise to an implication of acceptance. In the case of a common law dedication, the public acquires no rights and undertakes no duties in the property offered for public use until a valid acceptance has been made. *Small v. State Roads Comm'n,* 246 Md. 646, 229 A. 2d 408 (1967); *Hillshire Corp. v. Pachuta, supra; United Finance Corp. v. Royal Realty Corp.,* 172 Md. 138, 148, 191 Atl. 81 (1937). And until an acceptance makes the common law dedication complete, the original dedicator or his successors in interest may invoke or modify the offer to dedicate, in whole or in part. *North Beach v. North Chesapeake Beach Land & Imp. Co.,* 172 Md. 101, 116, 191 Atl. 71 (1937). But see, *Maryland National Capital Park & Planning Comm'n v. McCaw,* 246 Md. 662, 229 A. 2d 584 (1967), involving a statutory dedication." *Mauck v. Bailey,* 247 Md. at 443-444 (footnote omitted).

With remarkable coincidence, *Mauck* also had an estoppel contention that the old covenants running with the land precluded appellant from asserting title to streets and alleys. The Court answered:

"This argument, based on equitable principles, ignores the fact that acts constituting adverse possession are, by definition, 'inequitable,' since they include the possession of land in defiance of the rights of the legal owners for the prescriptive period. The doctrine is based on the policy that after 20 years, no one can complain of the 'inequitable' and indeed, formerly illegal possession. Where, as in this case, the appellee's possession is adverse to the rights of others in both the fee and the easement, restrictive covenants in the adverse possessor's deed, to support the easement, are also barred from enforcement by the running of the prescriptive period, as well as by acquiescence in the violation of the restrictions. *Schlicht v. Wengert,* 178 Md. 629, 635, 15 A. 2d 911 (1940) and cases therein cited. 3 Tiffany, *Real Property,* § 871 (1967 Cum. Supp.); *McLaughlin v. Neiger,* 286 S.W.2d 380 (Mo. 1956)." *Mauck v. Bailey,* 247 Md. at 446.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*
*Costs to be shared by appellants and*
*intervenor, equally.*